## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

TOM STEPHENS,

       Plaintiff,

       v.

COUNTY OF COOK, a municipal
corporation, Cook County Sheriff
TOM DART, in his official capacity,
Cook County Sheriff's Police Officer
SHERYL COLLINS, Cook County
Sheriff's Police Officer TIMOTHY
McPHILLIPS, and CIARA
McNEELY,

       Defendants.

No. 1:20-cv-2433

Judge Franklin U. Valderrama

### MEMORANDUM OPINION AND ORDER

Plaintiff Tom Stephens (Stephens) and Defendant Ciara McNeely (McNeely), have a son, LM, who was approximately four years old when the events giving rise to this lawsuit arose. The parties did not live together but had a custody arrangement whereby LM would spend time with Stephens. Based on McNeely's alleged suspicion of LM's exposure to sexual activity in Stephens's presence, she initiated psychiatric evaluations of LM, which in turn led to the Cook County Sheriff's Police Office investigating and subsequently arresting Stephens for sexual exploitation of a child. The state court subsequently dismissed the complaint, finding it to be fatally defective. Stephens sued McNeely, along with officers from the Cook County Sheriff's

Police Office, Sheryl Collins (Collins) and Timothy McPhillips (McPhillips), as well as the County of Cook and the Sheriff of Cook County, Tom Dart (Dart) (collectively, the Cook County Defendants). Stephens brings claims against Collins and McPhillips under 42 U.S.C. § 1983, alleging that they violated his Fourth and Fourteenth Amendment rights. He additionally brings a host of state law claims against the other Defendants: malicious prosecution against Cook County, Dart, and McNeely; intentional infliction of emotional distress against Dart and McNeely; defamation *per se* against McNeely; *respondeat superior* against Cook County and Dart; and indemnification against Cook County and Dart. Compl. ¶¶ 49-72. McNeely and the Cook County Defendants have separately moved for summary judgment. R. 75, McNeely Mot. S.J.; R. 82, Cook Cnty. Defs. Mot. S.J.; R. 83, Cook Cnty. Defs. Mem. S.J. For the reasons that follow, the Court grants Defendant Collins's[1] motion for summary judgment and relinquishes jurisdiction over the remaining state law claims.

## Background

The following undisputed facts are set forth as favorably to Stephens, the non-movant, as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 937 (7th Cir. 2003). While the Court draws all reasonable inferences from the facts in Stephens's favor, the Court does not "necessarily vouch[] for their accuracy." *Arroyo v. Volvo*

---

[1]As discussed in further detail *infra*, Stephens conceded summary judgment as to his federal claims against Detective McPhillips. Therefore, the only federal claims remaining were those against Detective Collins.

*Group North America, LLC*, 805 F.3d 278, 281 (7th Cir. 2015); *see also Knopick v. Jayco, Inc.*, 895 F.3d 525, 527 (7th Cir. 2018) (cleaned up)[2] ("Given this summary judgment lens, we do not vouch for the objective truth of all of these facts."). This background section details all material undisputed facts relating to Stephens's claim against Defendants and notes where facts are disputed, to the extent the disputed facts are supported by record evidence.

Stephens and McNeely have a son, LM, who was approximately four years old when the allegations concerning Stephens—forming the basis of this lawsuit—first arose. *See* R. 84, Cook Cnty. Defs. SOF ¶ 1. Stephens and McNeely never married nor lived together, and shared custody of LM pursuant to an agreement that provided Stephens with visitation rights on alternate weekends and one night each week. *Id.* On October 1, 2018, McNeely told her psychotherapist, Janet Greif, that she was worried about LM as he was having nightmares at preschool and wetting himself. *Id.* ¶ 2. McNeely was specifically concerned about LM's safety with his father, Stephens, over what she thought to be "explicit sexual exposure," as further referenced in a letter authored by Greif. *Id.* ¶ 4. Greif referred McNeely to Licensed Clinical Professional Counselor and psychotherapist Heather Teteak-Berg for evaluation of LM. *Id.* ¶ 2.

The same day, McNeely reached out to Teteak-Berg, telling her that LM was exhibiting concerning displays of sexual behavior, including compulsively talking

---

[2]This Order uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

about private parts. *Id.* ¶ 10. Teteak-Berg held nine sessions with LM between January and May 2019. *Id.* ¶¶ 5, 7, 8. Further, in February 2019, a few months after first contacting Teteak-Berg, McNeely began to have concerns that LM witnessed Stephens have sex when LM stayed at his home, based on statements LM made to her. *Id.* ¶ 11.

Teteak-Berg, meanwhile, reported that LM exhibited symptoms of "unspecified trauma and stressor-related disorder." *Id.* ¶ 12. LM's symptoms included "wetting accidents, compulsively talking about private parts, and undressing any form of doll used during play sessions." *Id.* ¶ 13. Teteak-Berg concluded, based on her observations of LM, that he was "witness to sexual behavior" between Stephens and a female counterpart. *Id.* ¶ 14. On March 9, 2019, Teteak-Berg authored a letter in which she stated that the guidelines of suspected child abuse and neglect were met, and that a formal investigation was warranted. *Id.* ¶ 18. The next day, after evaluating LM for multiple sessions, Teteak-Berg—a "mandated reporter" of possible sexual abuse—called the Illinois Department of Children and Family Services (DCFS) hotline to report the allegations against Stephens. *Id.* ¶ 17. DCFS then initiated an investigation based on the allegations and generated a child/abuse neglect report (CAN report), describing the allegations. *Id.* ¶ 19. The CAN report detailed the contents of Teteak-Berg's meetings with LM, including LM's description of sexual acts between Stephens and a woman named Sammie, LM's reported "dreams" of sexual encounters at Stephens's home involving a woman named

Sammie, Erica, or Alesha, and LM's naked drawings of Stephens and a woman named Sammie. *Id.* ¶ 20.

DCFS protocol mandates notification to law enforcement if reported allegations rise to the level of a criminal offense. *Id.* ¶ 24. Accordingly, DCFS notified the Cook County Sheriff's Office about the allegations against Stephens, and Defendant Detective Sheryl Collins, employed by the Cook County Sheriff's Office, was assigned the case on or about March 13, 2019. *Id.* ¶¶ 23-24.

As part of Detective Collins's investigation into the allegations, she authored an offense incident report, three general progress reports, and a supplementary report. *Id.* ¶¶ 33-35. After McNeely told her one of the sexual encounters purportedly occurred at a hotel, Detective Collins checked the registrations for the hotels McNeely named but found that they did not have a record of Stephens's presence.[3] R. 106, PSOF ¶¶ 16-17. Detective Collins's reporting describes two forensic interviews of LM, which occurred on March 18 and 20, 2019 as part of the investigation. *Id.* ¶¶ 35-36. During the second interview, LM stated that he witnessed, "with his own eyeballs," his father, Stephens, engage in sexual activity with a woman named Erica. *Id.* ¶ 39. According to Detective Collins, LM also demonstrated with body language and noises what he purportedly observed. *Id.* ¶ 45. At some point during this second interview, McNeely took LM to the bathroom.[4] PSOF ¶ 46. Following the second interview,

[3] Defendants object to this fact, arguing that it is subject to "more than one interpretation as to what the factual assertion is." *See* R. 116, Cook Cnty. Defs. Resp. to PSOF ¶ 17. The Court overrules this objection.
[4] Defendants object to the relevancy of this fact. *See* Cook Cnty. Defs. Resp. to PSOF ¶ 46. The Court finds this fact potentially relevant to Stephens's arguments in opposition to summary judgment and therefore overrules the objection.

5

Detective Collins then conducted a post-interview meeting with DCFS personnel, during which she spoke with both McNeely and the forensic interviewer, Breanna Barajas. Cook Cnty. Defs. SOF ¶¶ 40-41. According to Detective Collins, it was only after the second interview of LM that she came to believe that Stephens committed the subject offense. *Id.* ¶ 45. Based on the entirety of the investigation, Detective Collins made the decision to charge Stephens with sexual exploitation of a child, under 720 ILCS 5/11-9.1, as a misdemeanor. *Id.* ¶¶ 45-46.

Detective Collins contacted Stephens and advised him of the allegations. *Id.* ¶ 67. At Stephens's request, she contacted his attorney, Deborah Garrigus, and scheduled a meeting. *Id.* To assist with Stephens's arrest, Detective Collins enlisted Defendant Detective McPhillips. *Id.* ¶ 57. On May 8, 2019, Detective Collins, accompanied by Detective McPhillips, interviewed Stephens. During this interview, Stephens's attorney, Garrigus, provided Detective Collins with materials Garrigus and Stephens believed were relevant to the charges. *See* PSOF ¶ 30. According to Garrigus, when she handed Detective Collins the materials, she asked, "Aren't you interested in looking at all the exculpatory evidence I brought with?" to which Detective Collins said no, and then later added, "Just give it to me and I'll give to the State's Attorney and they can decide what they're going to do with it."[5] *Id.*; *see also* Cook Cnty.Defs. Ex. 4 at 98:24-99:12. During the interview, Detective Collins and McPhillips arrested Stephens, who remained in custody for six hours until he was

---

[5]Defendants dispute this fact in part. Cook Cnty. Defs. Resp. to PSOF ¶ 30. After reviewing the evidence, the Court finds that Cook Cnty. Defs. Ex. 4 (not Cook Cnty. Defs. Ex. 1, which Stephens cites) supports the statement of fact. Accordingly, the Court adds additional context based on the underlying evidence. *See id.* (citing Cook Cnty. Defs. Ex. 4).

released on bond. *Id.* ¶ 72. Approximately one month after Stephens's arrest, on June 8, 2019, a DCFS investigator found that, while "it is evident that the minor has been exposed to some inappropriate sexual content," the exploitation allegation was unfounded.[6] PSOF ¶ 48; *see also* Pl. Ex. 14 at 82. On June 20, 2019, Stephens appeared in state court. Cook Cnty. Defs. SOF ¶ 73. Neither Detective Collins nor Detective McPhillips, nor McNeely, for that matter, were present. *Id.* The state court dismissed the complaint against Stephens for facial insufficiency for failure to specify the dates of the offense. *See id.* ¶ 74.

Stephens sued Defendants Detective Collins and Detective McPhillips under 42 U.S.C. § 1983 for unlawful detention, false arrest, and deprivation of liberty, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. ¶¶ 37-48. He additionally brings a host of state law claims against the other Defendants: malicious prosecution against Cook County, Dart, and McNeely; intentional infliction of emotional distress against Dart and McNeely; defamation *per se* against McNeely; *respondeat superior* against Dart and Cook County; and indemnification against Dart and Cook County. Compl. ¶¶ 49-72. McNeely and the Cook County Defendants have separately moved for summary judgment. Stephens has since conceded summary judgment as to the federal claims against Defendant Detective McPhillips, as well as the *respondeat superior* and indemnification claims against Defendant Dart. *See* R. 107, Pl. Opp. Cook Cnty. Defs. Mot. S.J. at 1 n.1.

---

[6]Defendants dispute this fact in part. Cook Cnty. Defs. Resp. to PSOF ¶ 48. After reviewing the cited-to materials, the Court finds that the statement is properly supported. However, the Court adds additional context from the underlying evidence.

Accordingly, the only federal claims remaining are those against Defendant Detective Collins.

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 936 (7th Cir. 2022) (cleaned up). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby, Inc.*, 477 U.S. at 248.

In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d

697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

**Analysis**

The Cook County Defendants argue that Detective Collins is entitled to summary judgment because she had probable cause to arrest Stephens for sexual exploitation of a child. Alternatively, the Cook County Defendants contend that summary judgment is warranted under qualified immunity because Detective Collins had "arguable probable cause" to arrest Stephens. The Court addresses each argument in turn.

## I. Probable Cause Bars Stephens's § 1983 Claims Against Detective Collins

As noted above, the Cook County Defendants argue that Detective Collins is entitled to summary judgment because she had probable cause to arrest Stephens. *See* Cook Cnty. Defs. Mem. S.J. at 7-14. Because the existence of probable cause would serve as a complete barrier to Stephens's § 1983 claims, and as such would entitle Detective Collins to summary judgment, the Court starts with this argument. *See, e.g.*, *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009) ("settled law" that "probable cause is an absolute bar to a § 1983 claim for false arrest") (cleaned up); *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) ("Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution."); *Guenther v. Holmgreen*, 738 F.2d 879, 889 (7th Cir. 1984) (Fourteenth Amendment due process claim predicated

on allegations of false arrest, false imprisonment, or malicious prosecution are precluded by a determination of probable cause).

The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, guarantees the right of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, ... and no Warrants shall issue, but upon probable cause ...." U.S. Const., amend IV; *see also Maryland v. Pringle*, 540 U.S. 366, 369 (2003). An officer has probable cause to effectuate an arrest "when the totality of the facts and circumstances within his knowledge and of which he has reasonably trustworthy information is sufficient that a prudent person would believe that the suspect committed or was committing an offense." *Marshall v. Teske*, 284 F.3d 765, 770 (7th Cir. 2002); *see also Maryland*, 540 U.S. at 371 ("To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.") (cleaned up). Put slightly differently, "the determination of whether an arresting officer has probable cause to arrest an alleged offender turns on whether a reasonable person in the officer's position would have probable cause to believe that an offense has been committed. This inquiry, in turn, depends upon whether the facts and circumstances communicated to the arresting officer at the time of the arrest would warrant a reasonable officer in holding such a belief." *Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000).

The test for probable cause is objective, essentially asking whether a reasonable officer would have believed the suspect in question committed a crime. *See Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). Courts evaluate whether the officer in question possessed probable cause "not on the facts as an omniscient observer would perceive them," but rather "as they would have appeared to a reasonable person in the position of the arresting officer—seeing what he saw, hearing what he heard." *Id.*; *Marshall*, 284 F.3d at 770. If, for example, a "reasonably credible witness or victim" informs an officer that someone has committed a crime, the officer has probable cause to arrest the suspect. *See Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998). Notably, probable cause need not be based upon evidence sufficient to support a conviction, and can still exist even if the suspect is later acquitted or the charges are dropped. *See Woods*, 234 F.3d at 996; *Purvis v. Oest*, 614 F.3d 713, 723 (7th Cir. 2010). Indeed, an arrest is lawfully based upon probable cause even if the belief was mistaken. *See Kelley*, 149 F.3d at 646. For this reason, probable cause has often been referred to as "a zone within which reasonable mistakes will be excused." *Id.*

The crime for which Stephens was arrested, sexual exploitation of a minor, provides in relevant part that, "A person commits sexual exploitation of a child if in the presence or virtual presence, or both, of a child and with knowledge that a child or one whom he or she believes to be a child would view his or her acts, that person: (1) engages in a sexual act." 720 ILCS 5/11-9.1(a). Detective Collins argues that probable cause existed for Stephens's arrest due to: 1) the March 20, 2019 forensic

interview of LM; and 2) the materials she reviewed from DCFS. *See* Cook Cnty. Defs. Mem. S.J. at 10-13. Based on the knowledge she possessed as derived from these sources, Detective Collins posits that a reasonable officer in her position would have believed that Stephens engaged in a sexual act in LM's presence. *See id.* The Court begins with LM's forensic interview. During this interview, LM disclosed that he witnessed "with his own eyeballs" his father engage in sexual activity with a woman named Erica. *Id.* In addition to his statements, LM also demonstrated with body language and noises what he claimed to have observed. *Id.* After the interview, Detective Collins held briefings with DCFS personnel, the forensic interviewer Breanna Barajas, and McNeely. *Id.* at 10-11. Based on the interview and the post-interview briefing, Detective Collins believed that Stephens committed the subject offense. In addition to LM's forensic interview, Detective Collins states that probable cause arose from the DCFS's CAN report, which detailed LM's sessions with Teteak-Berg, including his specific statements as to sexual experiences at his father's home, the contents of his purported "dreams," and his naked drawings of Stephens and a woman named Sammie. *Id.* at 12. This report, Detective Collins maintains, provides additional and independent support for probable cause. *Id.* at 12-13.

Stephens, on the other hand, advances no less than ten arguments for the proposition of the *absence* of probable cause.[7] These arguments include: 1) McNeely coached LM to make false allegations; 2) Collins ignored exculpatory evidence; 3)

---

[7] Curiously, although Stephens argues that there was no probable cause for his arrest, this is not his burden, as he does not bring a cross-motion for summary judgment. Rather, to survive the Cook County Defendants' motion, he need show a genuine issue of material fact as to the existence of probable cause. *Homoky v. Ogden*, 816 F.3d 448, 452 (7th Cir. 2016).

DCFS concluded that the exploitation allegations against Stephens were unfounded; 4) no probable cause existed to believe that Stephens ever intentionally exposed LM to sexual activity; 5) Detective Collins failed to identify the date of the alleged offense or specific sexual partners; 6) there was no evidence that Stephens took LM to a hotel; 7) Detective Collins charged Tom with a misdemeanor instead of a felony; 8) the criminal complaint was facially invalid; 9) Detective Collins's actions in arresting Stephens failed to demonstrate her expertise or experience; and 10) Teteak-Berg's materials do not support probable cause. *See* Pl. Opp. Cook Cnty. Defs. Mot. S.J. at 3-19. The Court finds that none of Stephens's arguments create a genuine issue of material fact warranting denial of the motion for summary judgment.

Stephens appears to conflate the standard for probable cause with the standard for conviction. This is fatal to his position. First, the standard for probable cause is significantly less rigorous than the standard for a criminal conviction. As the Seventh Circuit has explained, an arresting officer "must have more than a bare suspicion that they have the right guy, but they need not have enough evidence to support a conviction or even to show that their belief is more likely true than false." *Fox v. Hayes*, 600 F.3d 819, 833 (7th Cir. 2010) (citing *Woods*, 234 F.3d at 996). "There is a difference between evidence of the kind that negates proof beyond a reasonable doubt and that which is so significant as to undo the existence of probable cause." *Purvis*, 614 F.3d at 723. Second, probable cause hinges on the information known to the arresting officer *at the time of the arrest*, not the events that transpired afterwards, nor all the evidence currently available to the parties. *See, e.g., Fox*, 600

F.3d at 836 (unless the fact at issue "was a circumstance known to [the officer] at the time of the arrest" it is irrelevant to probable cause). Third, to possess probable cause, Detective Collins was not required to conduct an overly detailed investigation or resolve each "inconsistency or contradiction" in a victim's account. *See Spiegel v. Cortese*, 196 F.3d 717, 725 (7th Cir. 1999); *Purvis*, 614 F.3d at 725. Lastly, Detective Collins need not have acted "as a judge or jury to determine whether a person's conduct satisfies all of the essential elements of a particular statute." *Wells v. City of Chicago*, 896 F. Supp. 2d 725, 735 (N.D. Ill. 2012). In other words, Detective Collins was not required to ascertain whether Stephens's actions, including his mental state, met every prong of the underlying statute for which he was charged before effectuating his arrest. *Hebron v. Touhy*, 18 F.3d 421, 423 (7th Cir. 1994) (officers "are entitled to act and let courts resolve conflicts about mental states") (cleaned up).

Courts consider the totality of the circumstances when evaluating whether an officer possessed the requisite probable cause to arrest a suspect. *Marshall*, 284 F.3d at 770. Based on the facts before the Court, the Court finds that Detective Collins possessed probable cause to arrest Stephens. A reasonable officer in her position, possessing the same knowledge, could have believed that Stephens had, according to the underlying criminal statute, "engage[d] in a sexual act" in the presence of LM. *See* 720 ILCS 5/11-9.1. The Court's finding of probable cause effectively bars all three of Stephens's § 1983 claims against Detective Collins. *See, e.g., Guenther*, 738 F.2d at 889 (Fourteenth Amendment due process claim); *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015) (Fourth Amendment unlawful detention claim); *Muhammad v.*

*Pearson*, 900 F.3d 898, 907 (7th Cir. 2018) (Fourth Amendment false arrest claim). All in all, viewing the evidence in the light most favorable to Stephens, the Court finds that there is no genuine issue of material fact as to whether Detective Collins possessed probable cause to arrest Stephens. Accordingly, the Court grants Detective Collins's motion for summary judgment based on a finding of probable cause for Stephens's arrest.

## II. Arguable Probable Cause and Qualified Immunity Serve as Additional Barriers to Liability

While the Court has found that probable cause existed for Stephens's arrest, thus foreclosing his claims for unlawful detention and false arrest against Detective Collins, the Court finds that Detective Collins is additionally immune under "arguable probable cause" and its resulting grant of qualified immunity. *See* Cook Cnty. Defs. Mem. S.J. at 15-16.

Qualified immunity "shields officials from civil liability so long as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Hernandez v. Mesa*, 582 U.S. 548, 554 (2017) (cleaned up). "The doctrine of qualified immunity balances dueling interests—allowing officials to perform their duties reasonably without fear of liability on the one hand and affording members of the public the ability to vindicate constitutional violations by government officials who abuse their offices on the other." *Lopez v. Sheriff of Cook Cnty.*, 993 F.3d 981, 987 (7th Cir. 2021) (cleaned up). "The purpose of qualified immunity is to protect 'all but the plainly incompetent or those who knowingly violate

the law.'" *Humphrey v. Staszak*, 148 F.3d 719, 727 (7th Cir. 1998) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Crucially, when a defendant raises qualified immunity, the burden shifts to the *plaintiff* to defeat this defense. *See Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 2722 (2020); *see also Buchanan v. Pfister*, 2020 WL 902829, at *12 (N.D. Ill. Feb. 25, 2020). Here, Detective Collins has properly raised a qualified immunity defense. As a result, the burden shifts to Stephens to defeat this defense. *See Buchanan*, 2020 WL 902829, at *12; *see also Leiser*, 933 F.3d at 701.

A plaintiff may defeat qualified immunity by showing that (1) the defendant's conduct violated a constitutional right, and (2) the violated right was clearly established at the time of the alleged misconduct. *Lewis v. Downey*, 581 F.3d 467, 478 (7th Cir. 2009). A court can choose which element to address first. *Lopez v. Sheriff of Cook Cty.*, 993 F.3d 981, 987 (7th Cir. 2021). "A plaintiff can show that a right is 'clearly established' by statute or constitution in at least two ways: (1) [s]he can point to an analogous case establishing the right to be free from the conduct at issue; or (2) [s]he can show that the conduct was 'so egregious that no reasonable person could have believed that it would not violate clearly established rights.'" *Steidl v. Fermon*, 494 F.3d 623, 632 (7th Cir. 2007) (quoting *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001)). A right is "clearly established" if the conduct is so clearly prohibited that every "reasonable official would [have understood] that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). There need not be a case exactly on point for a right to be clearly established, but "existing precedent must

16

place the lawfulness of the particular arrest beyond debate." *D.C. v. Wesby*, 583 U.S. 48, 64 (2018) (cleaned up); *see also Alicea v. Thomas*, 815 F.3d 283, 291 (7th Cir. 2016). Still, the right must have been clearly established "in a particularized sense, rather than at a high level of generality." *Id.* Put another way, "the official must have [had] fair warning that his conduct [was] unconstitutional." *Roe v. Elyea*, 631 F.3d 843, 859 (7th Cir. 2011) (cleaned up).

A finding of "arguable probable cause" for Stephens's arrest would, in turn, grant Detective Collins qualified immunity. *Fleming v. Livingston County, Ill.*, 674 F.3d 874, 779-80 (7th Cir. 2012). "Although closely related, a determination of actual probable cause is separate and distinct from a determination of what is sometimes referred to as 'arguable probable cause" for qualified immunity purposes." *Burritt*, 807 F.3d at 250. "Probable cause is a purely objective inquiry, whereas arguable probable cause considers whether an officer's subjective beliefs were objectively reasonable." *Johnson v. Meade*, 2025 WL 564305, at *26 (N.D. Ill. Feb. 20, 2025) (cleaned up). Arguable probable cause exists when a "reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could reasonably have believed that probable cause existed in light of well-established law." *Mwangangi v. Nielsen*, 48 F. 4th 816, 825 (7th Cir. 2022). In short, as long as a reasonable officer in Detective Collins's position—in the same circumstances and possessing the same knowledge—could have *reasonably believed* that probable cause existed in light of well-established law, she is shielded from liability. *See Fleming*, 674 F.3d at 880.

17

Detective Collins argues that, at a minimum, arguable probable cause existed for Stephens's arrest. *See* Cook Cnty. Defs. Mem. S.J. at 15. In support, she references the same evidence she used to argue probable cause: the forensic interview of LM and the documents provided to her from DCFS. *See id.* at 15-16. Stephens, on the other hand, makes virtually *no* argument as to the lack of arguable probable cause or the corresponding question of qualified immunity, despite possessing the burden to convince the Court of qualified immunity's inapplicability. *See* Pl. Opp. Cook Cnty. Defs. Mot. S.J. at 25. Instead, Stephens cursorily points to "the evidentiary record as discussed herein" to support his argument that "no reasonable officer would believe she would have probable cause to arrest, detain, or prosecute Tom." *Id.* Reference to the "record as discussed herein," however, fails to satisfy Stephens's burden as to qualified immunity. As a result, Detective Collins argues that Stephens has essentially waived any challenge as to qualified immunity. R. 115, Cook Cnty. Defs. Reply Mot. S.J. at 13. The Court agrees. *See, e.g.*, *Cardenas v. Grozdic*, 67 F.Supp.3d 917, 922-23 (N.D. Ill. 2014) (citing *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (failure to offer opposition to argument constitutes waiver).

Waiver aside, the Court agrees with Detective Collins that both LM's forensic interview and DCFS's materials, taken together, would allow an officer in her position to reasonably but mistakenly believe that probable cause existed to justify Stephens's arrest. *See Schimandle v. DeKalb Cnty. Sheriff's Off.*, 2023 WL 3479184, at *4 (N.D. Ill. May 16, 2023), aff'd, 114 F.4th 648 (7th Cir. 2024) ("Even assuming probable cause did not exist, then arguable probable cause existed, which entitles

Det. Duehning to qualified immunity."). Accordingly, even if probable cause did *not* exist, arguable probable cause and its corresponding grant of qualified immunity would shield Detective Collins from suit.

### III. The Court Relinquishes Supplemental Jurisdiction Over the Remaining Claims

The Court's grant of summary judgment in favor of Detective Collins terminates all of Stephens's federal claims. Recall, however, that in addition to these federal claims, Stephens also brings state law claims against the other Defendants. *See* Compl. ¶¶ 49-72; *see also* Pl. Opp. Cook Cnty. Defs. Mot. S.J. at 1 n.1 (conceding summary judgment as to two state law claims against Dart).

"When federal claims drop out of the case, leaving only state-law claims, the district court has broad discretion to decide whether to keep the case or relinquish supplemental jurisdiction over the state-law claims." *RWJ Mgmt. Co. v. BP Prod. N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012); 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (cleaned up).

"When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt.*, 672 F.3d at 479 (cleaned up); *see also*

19

*Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); ("[T]he usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." (cleaned up).

Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (cleaned up).

Here, relevant factors weigh in favor of the Court following the "usual practice" in the Seventh Circuit and relinquishing supplemental jurisdiction of Stephens's remaining claims. *Groce*, 193 F.3d at 501. The statute of limitations will not have run on Stephens's state law claims, as both federal and state law toll the relevant limitations period when claims are pending in a civil action. *See* 28 U.S.C. § 1367(d); 735 ILCS 5/13-217; *Gendek v. Jehangir*, 518 N.E.2d 1051, 1053 (Ill. 1988) ("The purpose of section 13–217 . . . is to facilitate the disposition of litigation upon the merits and to avoid its frustration upon grounds that are unrelated to the merits"). The Court has not expended significant resources on the pending state law claims. To the extent the parties have during discovery, those efforts can be duplicated in state court with relative ease. While the parties have briefed summary judgment on

20

those claims, the Court has not yet decided them, and based on the Court's review of the briefs, it is not "absolutely clear how the pendant claims can be decided." *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 515 (7th Cir. 2009) (cleaned up). And, as always, comity favors allowing state courts to decide issues of state law. *See RWJ Mgmt.*, 672 F.3d at 479.

For these reasons, the Court exercises its discretion to relinquish supplemental jurisdiction over the remaining state law claims.

## Conclusion

For the foregoing reasons, the Court grants Defendant Sheryl Collins's motion for summary judgment. The Court relinquishes jurisdiction over the remaining state law claims.


Date: September 5, 2025

_____
United States District Judge
Franklin U. Valderrama